[Civil No. 2445. Civil No. 2431. Filed January 18, 1927.]

[252 Pac. 190.]

WILLARD H. MALCOLM, Appellant, v. THE VALLEY BANK, a Corporation, et al., Appellees.

THE VALLEY BANK ADJUSTMENT COMPANY, Defendant and Appellant, v. WILLARD H. MALCOLM, Plaintiff and Appellee.

For former opinion, see *ante*, p. 60, 250 Pac. 363.

JONES, Superior Judge.—Appellant, Malcolm, in a petition for rehearing in both cases, challenges our statement that a portion of the $869,000 doubtful assets transferred to the adjustment company was capital stock, surplus and undivided profits of and as reflected by the books of the old bank. We were in error. These items were canceled. The adjustment company paid for these doubtful assets $562,000 consisting of $150,000 in notes of directors of the old bank for common stock in such company, $200,000 in checks by depositors of the old bank on their accounts for preferred stock, and the company's note for $212,000. While our error is to be regretted, the point under discussion was not essential to a decision.

Furthermore, it is nevertheless utterly unreasonable to indulge in any presumption that the assets mentioned were worth their face value, $869,000. It is disclosed by the record that the new bank would

not handle this paper because of its doubtful, if not desperate, character, and the adjustment company resulted. It paid far less than $869,000. And of what it did pay the part contributed by the old directors was hardly in the nature of a voluntary investment. As one director testified, they never expected to get any value from the common stock, and they never did. Out of these assets, the adjustment company was able, after an energetic campaign of considerable duration, to raise but $305,000 gross, and this, too, when conditions bettered. Some $200,-000 of these assets sold for $750, which may have been less, but not shockingly so, than their value. The whole question is without much importance, as our former opinion discloses, but it is impossible to hold that these assets were worth $869,000 on the basis of any presumption.

In our consideration of Malcolm's appeal, we accepted for the purposes of the opinion the figure of $562,000 as representing the indisputable value of the doubtful assets. The bank scouts the idea that they were worth anywhere near that amount, and contends that the evidence does not support such a view. But we took Malcolm's view of it, leaving for consideration his attack upon the finding that the real estate was not worth as much as $214,000 when the sale took place.

We adhere to our conclusion that such finding is supported by competent evidence. It appears from the record that, when the banks were negotiating, an appraisal of the real estate was made by competent parties in good faith. In the trade between the two institutions, dealing at arm's-length, and without any thought of defrauding the plaintiff or anyone else, as far as this record suggests, they agreed that the purchase price of the realty should be at the figure it was carried on the books of the old bank, some $192,000.

These facts appeared from the sworn testimony of the witnesses, or were unquestioned, excepting, however, the value of the realty as carried on the books. A report of an accountant, appointed by consent of all parties to examine the records of the two banks and the adjustment company, and report therefrom the assets which had been sold, states the value as reflected by the books. It sets up a list of the realty and the amounts representing what each piece was carried for on the books and the appraisers' valuation. The property was carried for $192,000, and appraised at about $202,000.

Counsel stoutly maintain that we have no right to refer to these figures because they were never offered in evidence. Furthermore, they contend that the appraisal figures were never tied to the testimony of witnesses, and that the court in truth never considered them. We are not satisfied that these positions are well taken. But we may put aside the appraisal figures. Clearly the court below did have the right to, and did, consider the report to determine the gross amount for which the realty was carried on the books; there being evidence that upon that basis the realty had been sold. It was not suggested in the court below that such right did not exist. Our reading of the record leads us to the conclusion that all counsel entertained the idea that the report could be considered for that purpose, even if it might not be looked at to determine the appraisal figures, both of which figures, by the way, were physically before the court without any effort at elimination, and inserted in the abstract by Malcolm on his appeal.

And in the opening brief of Malcolm, appellant, we find counsel saying:

"C. P. Lee, an accountant, was appointed by the court to examine the records of the defendants and report the assets taken over by the Valley Bank, the Valley Bank Adjustment Company, and the ex-

changes of such assets between them as provided by the contract between them and the liabilities assumed. Mr. Lee's reports appear in the abstract. They were accepted by all parties as truly representing the records of the defendants, and, as to the values of property acquired and liabilities assumed, were, of course, claimed by defendants to be correct.

"The plaintiff (Malcolm), however, protested that, as the values of the real estate shown were merely 'book values' representing the investment of the bank in the lands, they did not represent necessarily the true values at the time they were taken over by the new Valley Bank, and therefore much of the evidence was devoted to showing that these lands were, when so taken over, of a greater value than that appearing on the books of the defendants, and we submit that this was shown beyond a doubt, and it is in the value of this class of property over the book value that appellant claims to have proved beyond dispute the excess of property received by the new Valley Bank over liabilities assumed."

This view hardly squares with the present contention, so insistently made, that the court should not examine the report even for the limited purpose of finding the values carried in the books. It must be remembered that by independent and indisputable evidence, of unquestioned competency, it appeared that the realty was sold on the basis of "book value," so called. There is nothing to show that the parties to the transaction believed the book value to be other than their opinion of the actual value.

Even if there were nothing else in the record (for other considerations, reference is made to the former opinion), the court was confronted with the problem of finding the actual value to be that set by the parties to the transaction honestly and in good faith after a *bona fide* effort at appraisal, and while dealing at arm's-length, or that set by experts nine years after the sale took place. Who can really quarrel because it accepted the former rather than the latter?

Nothing save the abrogation of the salutary rule that findings of fact supported by competent evidence will be left undisturbed would justify a reversal of this case. This we are unwilling to do, hard as the result may seem to Malcolm.

To the contention that the trial judge kept the case under advisement for nearly a year, and, in the haste of retiring from office, forgot the evidence, we can only say that, much as is the practice of unnecessarily delaying decisions to be disapproved, particularly in view of paragraph 528, Civil Code of 1913, directing a decision within sixty days after final submission (this provision being held to be directory only), we are loath to believe this case was decided without a clear comprehension of all the essential facts.

We have reconsidered the record with great care. Our only excuse for this discussion of the evidence is the strong insistence of counsel that their contentions were not answered and the regretted misstatement of fact above mentioned.

Motion denied.

ROSS, C. J., and McALISTER, J., concur.